**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2025-CA-00223-COA**

IN THE MATTER OF THE ESTATE OF                        **APPELLANT**
WILLIAM BARNARD PACE: KATE WOODARD
PACE

v.

KATHRYN PACE PHILLIPS,                                   **APPELLEES**
ADMINISTRATRIX OF THE ESTATE OF
WILLIAM E. PHILLIPS, DECEASED AND TOM
PACE, EXECUTOR OF THE ESTATE OF
WILLIAM BARNARD PACE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/2025 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL MADISON TAYLOR JR. |
| ATTORNEYS FOR APPELLEES: | G. TODD BURWELL |
| | JILLIAN ROCHELLE ETHERIDGE |
| | RICHARD ALLEN EISENBERGER JR. |
| | KENNETH B. RECTOR |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 07/28/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     As a condition of their divorce judgment, a father agreed to carry a million dollar life insurance policy in favor of his four children, with their mother to serve as trustee of the money.  But he did not hold up his end of the bargain.  After his death, the mother discovered there was only half the amount available, and she was cut out as trustee.

¶2.     She probated a claim to enforce the judgment, which resulted in the children receiving

the full amount due to them. But she was not made trustee. The trial court found her petition to probate was satisfied.

¶3. She appeals, arguing she should hold the powers of trustee over her children's money. Finding error, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶4. Kate and William Pace were married in 2000. They had four children during their marriage.

¶5. About 16 years later, the couple mutually sought a divorce on the grounds of irreconcilable differences. The Paces further entered into a "Child Custody and Property Settlement Agreement." Both parties signed the PSA and initialed each page.

¶6. The terms of their PSA required Will to maintain a life insurance policy worth a million dollars for the benefit of the four children, and named Kate as trustee for the children:

> Husband and Wife acknowledge and agree that Husband shall continue to maintain his life insurance policy on his life in the amount of $250,000 per child for the total sum of $1,000,000 with the minor children being named as the irrevocable beneficiaries and Wife being named trustee. . . . Husband/Wife each agree to maintain [a] life insurance policy with the other party being named trustee of same until said child turns Twenty-One (21) years old. In addition, Husband nor Wife shall not borrow against, encumber or hypothecate said policy.

> Said total value(s) on each child shall remain in effect until each child has attained the age of Twenty-One (21), or until such time that all of the minor children have obtained their bachelor degree, whichever occurs first.

¶7. The following sentence was included toward the end of the PSA: "Husband and Wife both understand and agree that this Agreement is made and entered into as a Mississippi Contract, and this Agreement shall be binding and enforceable upon execution of the same."

And, "Each party acknowledges and agrees that in the event either party is required to seek relief from the [c]ourt to enforce this Agreement, then the defaulting party shall be responsible for the non-defaulting party's attorneys, costs and expenses associated with such action."

¶8.     The chancery court officially granted Will and Kate a divorce in 2016 and incorporated their PSA into the final judgment of divorce.

¶9.     Kate discovered years later, only after his death, that Will violated the court's final judgment in at least three ways. First, he did not maintain life insurance in the amount of a million dollars. Rather, his policy was for half that, only $500,000. Second, the children were not named as beneficiaries on the policy, as was required. Instead, he named a new entity called the William Barnard Pace Insurance Trust, that he created. Third, he did not name Kate as trustee, like the parties had agreed. Instead, he named his brother Tom, and expressly foreclosed naming Kate as the trustee.

*The Opening of Will Pace's Estate*

¶10.     Will died six years after their divorce, in 2022. His brother Tom was appointed executor of his estate.

¶11.     Shortly thereafter, a creditor probated a claim against the estate based on a prior judgment. William Phillips had obtained a default judgment against Will Pace in 2021, the year before he died. The default judgment had been taken after Will failed to pay Phillips back on a loan of over $550,000. The judgment was for $718,515.82, and also included 8% interest until it was paid. Over $168,000 was for interest and a 10% penalty contained in the

3

promissory note.

¶12.    Kate, "individually and on behalf of the Pace Children," then filed a "Petition to Construe, Modify, and/or Reform the William Barnard Pace Life Insurance Trust 2022," in the Pace Estate.  Her petition was later amended.  Kate's amended petition claimed that she was "the rightful trustee" of the Trust and alleged that "[t]he Trust is to continue for the benefit of the minor children" of her and Will.

¶13.    In the amended petition, she alleged, "However, a potential legal issue has arisen with respect to the naming of the Trustee."  She argued she should have been named Trustee per the final judgment of divorce and the terms of their incorporated PSA.  She sought for the Trust to be reformed since Will "was in violation of the previous Order of divorce" and she was not named as trustee.

¶14.    She also claimed it should be reformed since "[u]pon information and belief: the trust is only funded in the amount of $500,000.00 which is only half of the amount required under the Final Judgment of Divorce."  Crucially, Kate argued that since the Trust did not name her as trustee, "said items should be deleted from the Trust."

¶15.    Her prayer for relief asked "that the [c]ourt modify or reform the Trust to appoint [her] as trustee," and "empower the Trust to immediately file a proof of claim for $500,000.00 to fully fund this trust, and that attorney's fees for the modification . . . be assessed to the trust and/or trustee."

*Probating the Two Claims Against the Pace Estate*

¶16.    William Phillips and Kate Pace both battled Will Pace's Estate to probate their claims.

4

(During the litigation, Phillips passed away, and his estate was substituted). Phillips sought to attack Kate's claims, attempting to limit what she could seek to $500,000. Ultimately, the two parties' claims were both competing with the comparably limited assets of the Estate.

¶17. The Pace Estate subsequently made payments to the parties pursuant to an agreed order to resolve their claims. The agreed order noted that by agreeing to the order, the parties did not "waive or release any claim or defense . . . including, but not limited to, the right to contest any claim filed herein or contend that any claimant has . . . received all to which said claimant is entitled[.]"

¶18. Phillips received partial payment of his probated claim totaling $477,618.40, or a little more than half of the amount he sought.

¶19. The Pace Estate then divvied up $500,000 to the four Pace children. One of the four was an adult by then and received a payment of $125,000.00. The other three children were still minors so $375,000 was paid into conservatorship accounts for their benefit.

¶20. Phillips then sought to force Kate out entirely and have her probated claim canceled. Phillips pursued cancellation arguing that Will's financial obligation to provide life insurance for the benefit of the children had been essentially satisfied. Phillips also contended Will's "obligation to provide life insurance as set forth in the Divorce Agreement has been fully satisfied," so Kate's claim for control of the Trust did not matter. He further sought to cancel her claims contending Kate's mission to become trustee was "irrelevant to the determination of whether the Decedent's contractual obligation to provide $1,000,000.00 life insurance coverage for the benefit of the children has been fully satisfied."

5

¶21. The chancery court found that Will's financial obligation to his children "has been fully satisfied by the aforesaid payment from the assets of this estate and by virtue of the insurance policy provided by the Decedent for the benefit of his children." The court concluded that "this estate has no further obligation to [Kate] or her children arising out of the provision of the Divorce Agreement requiring the Decedent to provide life insurance for the benefit of his children." The chancery court granted Phillips' motion to cancel Kate's claim.

¶22. Kate filed a timely notice of appeal from the chancery court's order.

## DISCUSSION

### I. Whether the chancery court's order was final and appealable.

¶23. The Pace Estate filed a motion to dismiss Kate's appeal, arguing that the chancery court's order canceling her claim "was not a final, appealable order[.]" In the course of the appeal process, a panel of our Supreme Court entered an order ruling the Estate's "motion should be passed for consideration with the merits of the appeal."

¶24. Accordingly, as an initial matter, our Court must determine whether we have jurisdiction over this appeal. As we have recently explained,

> "An appeal may be taken only from a final judgment." *Blaney v. Black Jack Oil Co.*, 325 So. 3d 1204, 1206 (¶8) (Miss. Ct. App. 2021). "This Court will dismiss uncertified interlocutory appeals." *Id*. And "[w]ithout the entry of a Rule 54(b) certificate, a trial court order which disposes of less than all of the claims against all of the parties in a multiple party or multiple claim action, is interlocutory." *M.W.F.* [*v. D.D.F.*,] 926 So. 2d [897,] 900 (¶4) [(Miss. 2006)] (referencing MRCP 54).

> "Generally, a final judgment is one that adjudicates the merits of the controversy and *settles all issues between all parties*." *LaFontaine v. Holliday*,

6

110 So. 3d 785, 787 (¶8) (Miss. 2013) (emphasis added). "In other words, an order is considered final if it *ends* the litigation *on the merits* and leaves nothing for the court to do but execute the judgment." *Id.* (internal quotation mark omitted).

*Clarksdale Mun. Sch. Dist. Bd. of Trs. v. Montgomery*, 425 So. 3d 520, 524 (¶¶12-13) (Miss. Ct. App. 2025).

¶25.    However, there are exceptions to this general rule.  The Mississippi Supreme Court "has held that an order that finally resolves a claim against an estate is final and appealable although the estate remains open." *In re Est. of Pavlou*, 308 So. 3d 1284, 1288 (¶12) (Miss. 2021).[1]

¶26.    While characterizing this order as interlocutory, the Estate has failed to provide meaningful argument as to why it is not final as to Kate's claims.  Instead, the Estate merely resorted to a personal attack, asserting that Kate would only want to appeal "because she wants money."  Yet as is clear from Kate's appeal, and as will be addressed below, what Kate seeks is not more money, but *control* over the money held in favor of her children.

¶27.    While the Pace Estate remains open, the chancery court's order at issue here terminated all of Kate's remaining claims. The trial court found "that the claim probated by [Kate] Pace on behalf of her children . . . and the subsequently amended claim filed by Pace individually and on behalf of her children . . . *are hereby deemed satisfied, cancelled, and released.*" As in *Pavlou*, this "finally resolves a claim against an estate," and is therefore

---

[1] *Pavlou* considered a collection of cases spanning over 30 years that allowed such appeal, including three where our "Court of Appeals has exercised jurisdiction over timely appeals from orders that finally determined probate claims although the estates remained open." *Id.*

7

final and appealable.

¶28.    In line with ample precedent, we find that the chancery court's order canceling Kate's probated claims was final and appealable.

**II.    Whether the chancery court erred in finding that the payment from the Pace Estate satisfied Kate's probated claim.**

¶29.    Next, Kate alleges that Will breached the terms of their divorce judgment. She argues that the chancery court erred when it failed to modify the Trust to appoint her as trustee or in the alternative create a constructive trust. According to Kate, "[d]espite the breach of all of these conditions," "the chancellor treated this as a mere underfunding issue."

¶30.    This Court's standard of review of a chancery court's decision is limited. *In re Est. of Lewis v. Thomas*, 422 So. 3d 484, 492 (¶26) (Miss. Ct. App. 2025).  "We will not disturb a chancery court's factual findings 'unless such findings are manifestly wrong or clearly erroneous.'" *Id*. (quoting *Prout v. Williams*, 55 So. 3d 195, 197-98 (¶8) (Miss. Ct. App. 2011)).  We review questions of law de novo.  *Id*.

¶31.    "[A] property-settlement agreement, though 'quasi-contractual,' is not simply a contract." *Moseley v. Smith*, 180 So. 3d 667, 673 (¶24) (Miss. Ct. App. 2014).  "Under Mississippi's irreconcilable-differences statute, [the parties'] property-settlement agreement, upon approval by the chancellor, became incorporated into the final judgment of divorce." *Id.* "As a result, the property-settlement agreement **is a court order**." *Id.* (emphasis added).

¶32.    At issue is the underlying divorce between Will and Kate, which occurred years before Will passed away.  The two agreed on certain terms in a property-settlement agreement.

¶33.    The most notable terms of the PSA, which were incorporated into the court order,

were that "Husband and Wife acknowledge and agree that Husband **shall** continue to maintain his life insurance policy on his life in the amount of $250,000 **per child** for the total sum of $1,000,000 with the minor children being named as the irrevocable beneficiaries **and Wife being named trustee**[.]" (Emphasis added). The PSA also mandated that "Said total value(s) on each child **shall remain in effect** until each child has attained the age of Twenty-One (21), or until such time that all of the minor children have obtained their bachelor degree, whichever occurs first." (Emphasis added).

¶34. It is uncontested that Will violated the terms of this court order—an order to which he willingly acceded to obtain the divorce. He did not maintain a life insurance policy in the amount of $250,000 for each of his four children, they were not named as the irrevocable beneficiaries, and Kate was not named trustee over these amounts.

¶35. Instead, Will only kept $500,000 total in life insurance, rather than the million to which he agreed and was court-ordered to obtain. The children were not named beneficiaries of the policy. The new Trust he created to hold the money stood in the children's place. He did not name Kate as trustee of the life insurance, choosing to name his brother instead.

¶36. By doing so, Will not only violated the express terms of the court order, but also the spirit. Instead of providing for his children and allowing the children's mother to govern how those monies would be spent, Will thrust half a million dollars into a trust controlled by his brother.

¶37. By granting the children access to the $500,000 held by the Trust, the trial court remedied *one* of the violations by Will Pace—the underfunding. But as Kate argues on

9

appeal, "the chancellor erred by treating this as a mere math problem that could be remedied by ordering additional money to be paid[.]" While three of their children are still minors, Kate will have to seek permission from Will's brother before she can buy them clothes, pay for sports and music lessons, or purchase a vehicle when they turn sixteen.

¶38. Money without the corresponding control of it is perhaps no money at all. There may well be the equivalent of a million dollars held for these children, but their mother cannot meaningfully control it *as Will agreed she would*, and as was incorporated into a Final Judgment of Divorce.

¶39. One of the great maxims of chancery court is that "equity will not suffer a wrong without a remedy." *Ainsworth v. Plunk*, 343 So. 3d 1108, 1116 (¶34) (Miss. Ct. App. 2022) (cleaned up). In this instance, the trial court allowed Kate to go without a remedy for Will's many wrongs. This was manifestly in error and allowed Will to posthumously disregard the agreed terms of the PSA and a court order. We therefore reverse the chancery court's order finding Kate's claims fully satisfied and canceled, and we remand for the court to fashion a remedy for Kate's lack of control over the monies accorded to her children.

¶40. At the inception of her petition in this estate, Kate always requested modification or alteration of the Trust to allow her to be trustee. Whether the chancellor determines a constructive trust should be imposed or substitutes Kate as trustee over the Insurance Trust is a matter left to the chancellor's discretion.

¶41. We also take this opportunity to clear up a misunderstanding by the parties, the chancery court, and the separate opinion. In *Moseley*, we undertook to determine whether

a three year statute of limitations applied to an action to enforce "a provision in the property-settlement agreement" between a husband and wife. 180 So. 3d at 673 (¶24).

¶42. This Court determined that a spouse later seeking to enforce a PSA that had been incorporated into a judgment was not seeking a remedy for a *breach of contract*. *Id*. Because "the property-settlement agreement is a court order," a suit to enforce it via contempt "was not for breach of contract." *Id*. "Rather, her action was to *enforce a judgment*." *Id*. (Emphasis added).

¶43. Regardless of what arguments were made below, it is clear from our precedent that what Kate was seeking was "to enforce a court-entered judgment, and not merely a private contract[.]" *Id*. at (¶31). Will had agreed to keep a million dollars in life insurance for the benefit of his children and to make Kate the trustee, and "equity will regard that as done which ought to have been done." *Faulkner v. Faulkner*, 192 Miss. 358, 5 So. 2d 421, 422 (1942).

¶44. We note that the PSA included a provision that if a party had to seek enforcement of its terms, then they were to be awarded attorney's fees. We further note that per *Moseley*, "[w]hen a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Moseley*, 180 So. 3d at 675 (¶37). Such matters should be addressed by the trial court upon remand.

## CONCLUSION

¶45. The litigation below has spanned many lawyers and hundreds of pages of filings. In

11

the end, it is a simple matter. When he divorced their mother, a father agreed to financially support his children in a very specific way. He failed to do so. The chancery court did not fully remedy the wrongs of the father, and so we must reverse and remand.

¶46. **REVERSED AND REMANDED.**

**WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J.**

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶47. Before this Court is an appeal from the chancery court's judgment finding that Kate Pace's probated claim was satisfied and released. I concur with the majority opinion that the chancery court's order is final and appealable. However, this Court is without jurisdiction to address Kate's arguments to enforce the contract related to the Insurance Trust and the judgment of divorce, as those matters still remain before the chancery court. Therefore, I dissent from the majority opinion's decision to address and rule on these arguments since they are outside the scope of the judgment appealed from and are not ripe for consideration by this Court.

¶48. Kate acknowledged in the trial court proceedings that her claim for breach of contract was a separate claim. In responding to the Pace Estate's arguments against summary judgment, Kate asserted that her probated claims are "clearly unrelated to the breach of contract claim for failure to maintain the life insurance policy pursuant to the terms of the

12

Agreement[.]"[2]   Kate's attorney also asserted at the hearing on the motion for partial summary judgment, "**The probated claims have no bearing on the motion for summary judgment or the complaint that's been asserted**."  (Emphasis added).  Moreover, the chancery court had not addressed the merits of these arguments or ruled on that motion by the time this appeal was filed, which Kate concedes in her brief.  Therefore, those issues may not be considered in this appeal.  *See Asanov v. Hunt*, 914 So. 2d 769, 774 (¶¶27-28) (Miss. Ct. App. 2005) (holding that appellee/cross-appellant could not cross-appeal on issues not yet ruled on by the trial court).

¶49.   The sole issue before this Court is whether the chancery court erred in granting Phillips's motion to release Kate's probated claim and finding that the probated claim is fully satisfied.  Kate asserts on appeal that the chancery court's allowing the Insurance Trust "to serve as 'partial compliance'" of the property-settlement agreement and ordering the $500,000 payment to cover the "shortfall" was improper.  Yet, the record clearly shows that the court's ruling granted Kate's specific request from her initial and amended petition, as stated:

> 19.   Kate W. Pace is requesting that the Estate of William Barnard Pace fund the remaining $500,000.00 as prescribed in the Trust, and makes said request as the Estate is a party to this suit as William Barnard Pace did not fully and finally fund the Trust as required in Exhibit "B."
>
> 20.   Kate W. Pace is requesting authority from the Court to file a claim on behalf of the trust and/or as next friend of the minor beneficiaries against the Estate for the shortage.

---

[2] The Pace Estate explains in its appellee brief that Will Pace had another life insurance policy that was "lost" after he suffered health issues, and he was unable to qualify for another policy.

By an *agreed* order of the chancery court entered on September 18, 2024, the remaining $500,000.00 "shortage" Kate requested in both petitions was paid from the assets of the Pace Estate. As the Phillips Estate asserts, "[s]ince it is undisputed that the Pace Children have received the benefit of $1,000,000.00 as agreed in the Divorce Agreement, it is impossible to conclude that the judge erred in deciding *this limited issue presented to him for decision*." (Emphasis added).

¶50.   Much of Kate's discussion on appeal, however, focuses on the chancery court's failure to impose a constructive trust, which Kate only requested in her May 2023 "Petitioner's Reply to Response in Opposition to Motion for Partial Summary Judgment" with regard to her breach-of-contract claim. Again, Kate attempts to assert issues related to her separate claim for breach of contract, which is not before us on appeal. Nor was the imposition of a constructive trust argued during the proceedings related to Phillips's motion and the current appeal. *See White v. White*, 913 So. 2d 323, 324 (¶4) (Miss. Ct. App. 2005) ("This Court's function is to consider claims of error committed at the trial level[,] and matters not presented to the trial court for a ruling may not usually be raised for the first time on appeal.").

¶51.   I therefore agree with the Phillips Estate that this issue is "irrelevant to the issue then before the court for resolution." I also find no merit to Kate's repeated arguments that "the chancellor erred by treating this case as mere monetary shortfall." Considering that the chancery court provided Kate with the requested relief asserted in her petitions, I do not find the court's ruling granting Phillips's motion was an abuse of discretion or clearly erroneous.

¶52.   Accordingly, I would affirm the court's judgment. Kate's remaining issues could be

14

raised in subsequent appellate proceedings once the chancery court has ruled on such issues, if the parties so choose.

**CARLTON, P.J. JOINS THIS OPINION.**